UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

QUICKEN LOANS,

        Plaintiff,                        CASE NO.:2:07-CV-13143

vs.                                         DISTRICT JUDGE. BERNARD A. FRIEDMAN
                                             MAGISTRATE JUDGE STEVEN D. PEPE

MELISSA JOLLY, et. al.,

        Defendants,
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL (DKT. # 78)

Plaintiff Quicken Loans alleges in its July 17, 2007, complaint that in addition to certain related negligence and contract claims that the Defendants conspired in violation of the Racketeer Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1962, to defraud Plaintiff by misrepresenting the value of 16 homes acquired by Defendant Melissa Jolly from Defendants Marva Brooks and/or Ronald Townsend (Dkt. #1). Plaintiff alleges that Defendants Stewart Title, Strebor Title and Tri-County Title Agency, Inc. were the closing and escrow agents who either knew or should have known the fraudulent nature of the transactions, but still closed on the sales.

On May 2, 2008, Plaintiff filed a motion to disqualify Defendant Tri-County Title's attorney, John Gilhool (Dkt. #78). Plaintiff's motion was responded to on May 15, 2008, and a reply was submitted on May 22, 2008 (Dkts. #80, 81). October 16, 2007, all pretrial matters were referred to the undersigned (Dkt. #22).

For the reasons discussed below, Plaintiff's motion is **DENIED**.

**I.**      **Factual Background:**

The present dispute centers around prior litigation regarding 1725 Crescent Drive, Flint, Michigan, which is one of the 16 properties involved in this case that was purchased by Defendant Marva Brooks.

On May 3, 2000, Arthur and Constance Gugin, apparently in a time of financial insolvency, transferred 1725 Crescent Drive by warranty deed to Ms. Brooks. On September 13, 2001, the Gugins filed a claim to quiet title claiming that the warrant deed for 1725 Crescent Drive to Ms. Brooks had been forged.

Prior to the Gugin's initiation of their suit against Ms. Brooks, Ms. Brooks sold 1725 Crescent Drive to Melissa Jolly. Melissa Jolly purchased the property with a mortgage from Quicken Loans. Defendant Tri-County Title, in this litigation, had issued a title policy on the 2000 sale to Ms. Jolly and would be exposed to title insurance payments if the title to Ms. Jolly was flawed because of the Gugin to Brooks warranty deed.

In 2002, Mr. Gilhool was retained by Tri-County Title to intervene on behalf of mortgagee Quicken Loan and purchaser Jolly in the *Gugin v. Brooks* quiet title litigation. On July 24, 2002, Mr. Gilhool filed a motion to intervene in the matter of *Gugin v. Brooks* on behalf of Quicken Loan and Melissa Jolly to preserve their respective interests in 1725 Crescent Drive. The motion to intervene was approved on August 5, 2002.

In October 2002, the Gugins agreed to dismiss their litigation with prejudice upon receipt of $20,000 from the original defendants in that suit contingent upon their prompt and good faith departure from 1725 Crescent Drive and providing another warranty deed to Marva Brooks. On November 18, 2002, Genesee County Circuit Court Judge Archie L. Hayman dismissed the Gugins's complaint.

On November 27, 2002, Melissa Jolly transferred, by warranty deed, 1725 Crescent

Drive to Bertrand Waldron for $254,000. Tri-County Title, also closing agent on that sale, sent a check totaling $201,367.24 to Countrywide Home Loans which had assumed the Jolly mortgage on Crescent Drive from Quicken Loans. A March 16, 2003, discharge of the Quicken Loan Mortgage on 1725 Crescent Drive was filed with the Genesee County Register of Deeds on March 27, 2003.

**II.     Legal Analysis:**

Michigan Rule of Professional Conduct 1.9(a) governs this motion and states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

MRPC 1.9(a).[1]

Prior to April 24, 2008, Quicken Loans did not know that Mr. Gilhool had represented Quicken in the *Gugin v. Brooks* litigation. Quicken's current counsel learned of Mr. Gilhool's prior representation of his client upon speaking with former counsel for the Gugin family (Dkt. # 78, p. 6).

Neither side provides any clear case law to support their assertions and instead they quote MRPC 1.9 and its Comment and argue the facts.

Quicken argues that (1) *Quicken v. Jolly* is the "same or substantially related" to the Genesee County case of *Gugin v. Brooks*, (2) Tri-County's interests are "materially adverse" to Quicken's in the present litigation and (3) Quicken never consented to Mr. Gilhool's

---

[1] Local Rule 83.22, notes that "[t]he Rules of Professional Conduct adopted by the Michigan Supreme Court apply to members of the bar of this court and attorneys who practice in this court" E.D. Mich. LR 83.22.

representation of Tri-County in a case adverse to Quicken's interest.  As stated by their counsel at oral argument, (2) and (3) are not disputed, but only whether the two suits are "substantially related."

The disqualification of an attorney in the middle of a litigation can work a severe hardship and give the moving party a significant instrumental advantage.  This tactical advantage is often the motivating force in filing such motions, and not any realistic concerns over breached loyalty or access to confidential information.  As Judge Duggan stated in *Malea Ltd. v. Steelcase* upon denying a motion to disqualify counsel under MRPC 1.9:

> "[A] party's right to have counsel of choice is a fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a party of its chosen counsel." quoting *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F. Supp. 2d 572, 579 (W.D.N.C.1998) (citations omitted).

*Malea Ltd. v. Steelcase*, 2003 WL 21816814, *2 (E.D. Mich. 2003).

Comment to MRPC 1.9 notes that "[t]he scope of a 'matter' for purposes of this rule may depend on the facts of a particular situation or transaction." MRPC 1.9 Comment.  The mere fact that a lawyer handled a certain type of case for a former client does not preclude the lawyer handling that type of case against that client if the facts are "wholly distinct." *Id.*  "The underlying question is whether the lawyer was so involved in the matter the subsequent representation can be justly regarded as changing sides in the matter in question." *Id.*

A.      Attorney Client Relationship:

Given that Mr. Gilhool entered an appearance in *Gugin v. Brooks* on behalf of Quicken Loan there existed an attorney-client relationship between him and Quicken.  This is the case even if Tri-County paid for the representation to protect its interests in not having to make any payments under the title policy it had issued on behalf of Ms. Jolly and her mortgagee, Quicken

Loans. Courts in the Sixth Circuit, as well Michigan State Courts, hold that creation of an attorney-client relationship is not dependant upon payment of fee or formal contract, but rather may be implied from the conduct of the parties. *See Baker v. LeBoeuf, Lamb, Leiby and MacRae*, 1993 WL 662352, *3 (S.D. Ohio 1993) (Neither a formal contract nor the payment of fees are essential elements to the creation of an attorney-client relationship.); *Macomb County Taxpayers Ass'n v. L'Anse Creuse Pub. Sch.*, 564 N.W.2d 457, 462 (Mich. 1997) ("the relation of attorney and client is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties.").

While there is a question of fact on whether Quicken exercised any degree of control over counsel Gilhool or shared any confidential information with him, it will be assumed for purposes of this decision that Mr. Gilhool was the attorney in fact for Quicken in *Gugin v. Brooks*.[2]

B. <u>Rule 1.9 & Sixth Circuit Precedent.</u>

Under Rule 1.9, the Sixth Circuit has adopted a three-part test to determine when to disqualify an attorney. Accordingly, disqualification is appropriate only if:

---

[2]Factors which courts in a variety of jurisdictions have used to support an attorney client relationship include: a consultation with an attorney, the consulting party's intent to seek legal advice, making an express contract, and an attorney's receipt of, or attempt to receive confidential information or records. *See* 48 Am. Jur. 2d <u>Proof of Facts</u> § 525 (2007) (collecting and summarizing factors that courts in other jurisdictions have considered in determining whether an attorney-client relationship exists).

> The relationship between an attorney and a client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith. A fundamental principle in the attorney-client relationship is that the attorney shall maintain the confidentiality of any information learned during the attorney-client relationship. . .
> *Thus, two factors are essential in establishing such a relationship: (1) the attorney must be authorized to act for the client; and (2) the client must exercise control over the attorney. (Emphasis added).*

7 Am. Jur. 2d <u>Attorneys at Law</u> § 138 (2008).

> (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify;
> (2) the subject matter of those relationships was/is substantially related; and
> (3) the attorney acquired confidential information from the party seeking disqualification.

*Dana Corp. v. Blue Cross & Blue Shield Mut.,* 900 F.2d 882, 889 (6th Cir. 1990).

In considering a disqualification motion, the moving party has the initial burden of coming forward with *prima facie* evidence that disqualification is warranted. *English Feedlot, Inc. v. Nordeen Labs., Inc.*, 833 F. Supp. 1498, 1506 (D. Colo.1993). For reasons noted by Judge Duggan in *Malea,* the disqualification remedy is viewed with some caution because it results in the loss of one party's chosen counsel and can involve substantial costs, delays and other hardships. *See e.g. Kitchen v. Aristech Chem.,* 769 F. Supp. 254, 257 (S.D. Ohio 1991); *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed. Cir.1984). Therefore, even if a violation is found, the Court may choose a remedy other than disqualification. See *Kitchen,* supra at 258-59.

In *Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979), the Sixth Circuit held that preparation of a patent was substantially related to a later patent infringement case given the attorney's prior access to all the client's patent files used in pursuing the patent. By way of comparison to an attorney gaining such specific confidential information in a prior attorney client relationship, the court in *Int'l Paper Co. v. Lloyd Mfg. Co.*, 555 F. Supp. 125, 136 (N.D. Ill. 1982), held that disqualification of counsel was inappropriate when counsel had only obtained general knowledge of the prior client's workings or manner of operating.

*Savoy Oil & Gas, Inc. v. Preston Oil Co.*, 828 F. Supp. 34 (W.D. Mich. 1993), demonstrates the particular similarities needed for disqualification under Rule 1.9, similar to an example given in the Comment to the Rule. The counsel in *Savoy* drafted an agreement for one party, and then switched sides to represent the other party in a lawsuit disputing the same

agreement. *Savoy Oil & Gas, Inc.,* 828 F. Supp. at 37. The Court held that Plaintiff "switched sides" and that a substantial relationship existed as the facts "which form the basis of this lawsuit, address the same subject matter." *Id.*

Rule 1.9 itself does not require that the moving party demonstrate that its former counsel acquired confidential information in the prior representation. Rather than requiring the former client to expose confidential information (even to the court *in camera)* the rule implies that such confidential information was obtained when the subject matter of the two suits is substantially similar.

On sequential representation involving litigated cases, that substantial similarity of the matters generally can be demonstrated from publically available documents and protect the moving party without disclosure of any confidential information. Yet, the moving party could proffer for *in camera* inspection certain confidential information provided to its prior counsel in order to demonstrate the substantially similarity of the two litigations as was attempted by the moving party in *Haworth v. Wickes Mfg. Co.*, 1994 WL 16099352, *2 (W.D. Mich. 1994). In that case, the district judge after reviewing the materials *in camera* concluded:

> After fully reviewing the information relating to these representations, the Court concludes that the information the law firm acquired from the representations is much more akin to the general information described in *Int'l Paper* rather than any specific knowledge of facts pertaining to the issues in this law suit [as was involved in the *Gen. Elec. Co. v. Valeron Corp.* case]

*Id.* at *3.

        C.      <u>Is the *Gugin v. Brooks* "Substantially Related" to the present case:</u>

In the present case, Quicken does not proffer for *in camera* review any specific

confidential information as the moving party in *Haworth* did. Rather, relying on public information, Quicken argues that Mr. Gilhool should be dismissed because the present suit (*Quicken v. Jolly*) is substantially related to the former suit in which Mr. Gilhool represented Quicken (*Gugin v. Brooks*). The basis of this claim is "because they both involve the 1725 Crescent Drive, Flint, Michigan 48503 transactions from the Gugins to Brooks and from Brooks to Jolly" (Dkt. #78, p. 6) as well the existence of fraud claims in both suits. Plaintiff's counsel argues that part of the fraud in the present case was the non-disclosure of the Gugin to Brooks conveyance so close in time to the Brooks to Jolly conveyance, which non-disclosure Plaintiff contends was done to mask the fact that this was a "flip sale." While "flip sales" can be totally legal, they often cause a heightened degree of scrutiny for the risks of possible fraud when the resale price is significantly above the acquisition price as apparently was the case with the Crescent Drive sale to Jolly.

Yet, there is little factual support for the assertion that Mr. Gilhool's prior representation of Quicken is substantially related to the present suit other than both involve the Crescent Drive property and possibly allegations of fraud by Ms. Brooks (though the *Gugin* complaint does not specifically allege Ms. Brooks forged the deed).

While there may have been a fraud claim latent in the *Gugin v. Brooks* case, Mr. Gilhool when representing Quicken Loans was not asserting any fraud, rather his position on behalf of Quicken would be that the Gugin to Brooks conveyance was proper. The case was resolved with no finding of wrongdoing. Even if both cases involved alleged fraud, the alleged wrongs are totally different and remote in time. The wrongdoing implicit in the *Gugin* case involved Ms. Brooks, whereas the misrepresentations alleged in the current case involve Ms. Jolly, albeit allegedly acquiesced in by Ms. Brooks in their coordinated activities. There is no showing or

proffer that anything Mr. Gilhool learned in representing Quicken Loans in the *Gugin v. Brooks* case could remotely give him an advantage in defending his client Tri-County Title in the present case. It is true that a moving party need not show specific confidential information was learned in the prior case, yet, here there is the absence of any confidential or any non-confidential facts involved in the *Gugin* case being involved or giving Mr. Gilhool any advantage in the present case. This total lack of any overlapping facts demonstrates the simple fact that the two cases are not substantially similar within the meaning of Rule 1.9.[3] Like the *Haworth* case, Mr. Gilhool has, at most, only general and not specific information about Quicken Loans. His former actions were to resist a quiet title claim of the Gugins. His client's goals were ultimately obtained in the *Gugin* case and the quiet title case dismissed. At no time, did Mr. Gilhool's earlier representation of Quicken Loans involve similar facts or allegations of fraud involving non-disclosures and misrepresentations concerning Ms. Jolly or a "flip"sale of 1725 Crescent Drive that are alleged to have occurred in the present case. Nor did the outcome of the Gugins's suit have any effect on the viability of the claims brought by Quicken Loans in the present case. In no way can it be said that Mr. Gilhool has switched sides on the issue that the

---

[3] In a case where a lawyer is opposed to a former client in a case that is *not* substantially related to the earlier representation, if that lawyer obtained any confidential information from the prior client, it cannot be used against the former client under Rule 1.9(c) which reads:
> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Gugin to Brooks conveyance(s) gave clear title to Ms. Brooks.

Further, there is no indication that any confidential information was provided Mr. Gilhool by Quicken Loans.  There is no showing that Mr. Gilhool's knowledge of Gugin to Brooks case and conveyance as it related to this litigation are not generally available to the public in the Genesee County Register of Deeds or Genesee County Circuit Court.

The concerns addressed by MRPC 1.9 are serious – it is imperative that attorneys avoid the impropriety in their dealings with clients past, present and future.  The integrity of the profession requires such integrity.  The mere appearance of impropriety; however, is not sufficient to trigger application of this rule.  Absent more, there is a risk that motions to dismiss counsel will be used by the parties for tactical advantage either to increase fees, dismiss opposing counsel or to gain negotiating leverage.

Given Plaintiff's failure to show that Mr. Gilhool's representation of Quicken Loans in *Gugin v. Brooks* is substantially related to his work in *Quicken v. Jolly,* as well as the lack of evidence that Mr. Gilhool received any confidential information from Quicken, Plaintiff's motion to dismiss is **DENIED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and E.D. Mich. LR 72.1(d).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.  Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty

(20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**SO ORDERED.**

Dated: June 24, 2008                                            s/ Steven D. Pepe
Ann Arbor, MI                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Order* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 24, 2008.

                                                                 s/ J. Creary
                                                                 Deputy Clerk